**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SANDRA WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 14-1198-JWL |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.   Background**

Plaintiff applied for DIB and SSI benefits, alleging disability beginning June 16, 2011. (R. 23, 170-210). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the

Administrative Law Judge (ALJ) erred in two respects. First, the ALJ relied upon the medical opinion of a nonexamining physician who did not review all of the medical evidence, yet in his decision the ALJ did not adequately account for the evidence not reviewed by that physician. And, Plaintiff argues that the credibility determination is erroneous because the ALJ relied too heavily on Plaintiff's inability to obtain regular medical treatment without considering the explanation for her lack of treatment.

    The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

    The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the ALJ's decision, and will address each issue in the order addressed in Plaintiff's Brief.

## II.	It Was Not Error to Rely on the Opinion of Dr. Eades

Plaintiff points out that the ALJ relied upon the nonexamining source opinion of a state agency physician, Dr. Eades and concluded that Plaintiff has the RFC to perform a range of light work.  (Pl. Br. 7) (citing R. 26).  She points out that after Dr. Eades provided an opinion, Plaintiff visited a nurse-practitioner at GraceMed who referred her for examinations by two specialists, a neurologist, Dr. Reddy, and a rheumatologist, Dr. Shaver.  (Pl. Br. 11).  Plaintiff notes that Dr. Reddy's and Dr. Shaver's treatment notes are in the record, but they were never given to Dr. Eades to review and update her opinion.  Id. at 12.  She argues that the "ALJ's discussion of the subsequent medical records does not compensate for Dr. Eades's incomplete review," id., because "the ALJ never discussed the subsequent medical records from GraceMed or the rheumatologist," Dr. Shaver, and did not discuss all of the findings of Dr. Reddy.  (Pl. Br. 13).  Plaintiff argues that these errors are prejudicial to her because the ALJ did not reconcile Dr.

Reddy's and Dr. Shaver's probative findings with the ALJ's conclusions that Plaintiff can stand and/or walk six hours in a workday, or that Plaintiff is frequently able to finger bilaterally. Id. at 14.

The Commissioner argues that the ALJ reasonably relied upon Dr. Eades's opinion in finding that Plaintiff can perform a range of light work, and that Dr. Eades's opinion is consistent with and supported by the record and is supported by Dr. Balson's report of his examination of Plaintiff. (Comm'r Br. 10). She argues that the ALJ's decision "explained that the subsequent evidence did not impact the RFC because it was either consistent with the prior medical evidence reviewed by Dr. Eades, or did not conflict with the ALJ's ultimate RFC finding." Id. She argues that the ALJ did not need to specifically discuss Dr. Shaver's treatment notes because Dr. Shaver recommended only nightime splints for Plaintiff's carpal tunnel syndrome, his opinion was "largely based on Plaintiff's own subjective complaints regarding her pain and dexterity," and Dr. Shaver's findings are "largely consistent with the findings of Dr. Balson." Id. at 11. She points out that an ALJ is not required to discuss every piece of evidence, and argues that Dr. Shaver and the providers at GraceMed did not opine regarding functional limitations beyond those accounted for in the RFC assessed, that the ALJ specifically relied on Dr. Reddy's findings, and that "the ALJ's failure to expressly discuss Dr. Shaver's records should not change the outcome of the case." (Comm'r Br. 12).

As Plaintiff points out, the ALJ relied on Dr. Eades's opinion in finding that Plaintiff is able to perform a range of light work. (R. 26). Further, the ALJ concurred

5

with Dr. Balson's opinion that Plaintiff can perform light exertional level work, and found Dr. Balson's opinion persuasive.  Finally, he accorded "little weight" to Dr. Dillon's "opinion basically that the claimant cannot perform any work."  (R. 30) (citing Ex. 7F (R. 357-59)).  He discounted Dr. Dillon's opinion because it was inconsistent with the medical evidence and with Plaintiff's daily activities, and was not supported by corroborating treatment notes.  (R. 30).

The ALJ explained why he relied upon Dr. Eades's opinion and found Dr. Balson's opinion persuasive:

> Dr. Eades made a complete review of the medical record and provided detailed information from the claimant's treatment records and from the claimant's medical providers in reaching her opinion.  Dr. Eades relied in part on the opinion of Dr. Balson, who opined that based on results of his examination of the claimant, the claimant could perform light exertional work. (Exhibit 4F)  The undersigned observes that Dr. Eades is well acquainted with the agency's rules governing the criteria for disability and the decision-making process.  Therefore, as Dr. Eades' [sic] opinion is generally consistent with the evidence as a whole, the doctor's opinion is persuasive.  The undersigned concurs with Dr. Balson's opinion that the claimant can perform light exertional level work.  This opinion is consistent with the established residual functional capacity and the medical evidence. (Exhibit 4F)  For these reasons, the undersigned concludes that Dr. Balson's opinion is also persuasive.

(R. 26).

Plaintiff argues that remand is necessary because Dr. Eades did not have access to the subsequently produced medical records and as a consequence her opinion was out of date when the ALJ relied upon it.  However, as the Commissioner argues, the ALJ was not required to reject Dr. Eades's opinion merely because it was not based on 100% of the

evidence. Rather, it was the ALJ's duty to consider all of the record evidence and assess an RFC based upon that evidence. Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004) ("the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."). Therefore, the real question is whether the ALJ's evaluation of the medical opinions, and his RFC assessment based in part on that evaluation, is supported by substantial evidence.

Plaintiff does not argue that the ALJ accorded controlling weight to Dr. Eades's opinion. If an opinion is accorded controlling weight, no other opinion need be accepted. And, the ALJ both concurred with and found persuasive, Dr. Balson's opinion that Plaintiff is capable of light exertional work. Moreover, it would be error to accord controlling weight to a nonexamining source opinion, because only a treating source opinion may be accorded controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also, Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (explaining the nature of the inquiry regarding a treating source's medical opinion). Rather, as quoted above, the ALJ relied upon Dr. Eades's opinion because her opinion was based upon a complete review of the medical record, because her opinion provided detailed information from the claimant's treatment records and from the claimant's medical providers, because Dr. Eades relied upon Dr. Balson's opinion, and because Dr. Eades is well acquainted with the agency's rules governing the criteria for disability and the decision-making process for evaluating disability. (R. 26). Moreover, the ALJ also relied, in part, on Dr. Balson's opinion. Id.

7

Plaintiff is correct when she asserts that Dr. Eades did not perform a <u>complete review</u> of the medical records, because Exhibits 10F, 11F, and 12F represent treatment record from GraceMed and Neurology Consultants of Kansas which were not in existence when Dr. Eades reviewed the record and stated her medical opinion.  However, that fact requires a finding of error only if the ALJ erred in failing to adequately consider those later records.

Plaintiff's appeal to the treatment records provided by Mr. Cloven, the physician's assistant at Ashley Clinic fails for several reasons.  First, as Plaintiff acknowledges, the Ashley Clinic records were in the administrative record and were reviewed by Dr. Eades before she prepared her opinion.  Plaintiff's assertion of error (Mr. Cloven noted that the information provided to him was outdated and insufficient to determine Plaintiff's functioning, whereas Dr. Eades opined based upon the same information that Plaintiff is able to perform a range of light work) does not require a finding of error.  Although Plaintiff asserts the information available to Mr. Cloven and Dr. Eades was the same, that is not certain because the record does not require a finding that all of Plaintiff's medical records up to that point were presented to Mr. Cloven, and the record does not reveal what, precisely, Plaintiff told Mr. Cloven.  Moreover, even if one assumes the information reviewed by both providers was identical, Mr. Cloven is a physician's assistant, whereas Dr. Eades is a medical doctor--an acceptable medical source--and Plaintiff does not explain why Mr. Cloven's opinion should be accepted over that of Dr. Eades.  Finally, based upon his one-time treatment, Mr. Cloven prepared and signed a

8

Medical Source Statement which was also signed by Dr. Dillon. (R. 357-59). It is that medical source statement which the ALJ considered as the opinion of Dr. Dillon, and to which he accorded "little weight." (R. 30). Plaintiff does not even argue that this evaluation was erroneous.

Plaintiff argues the ALJ's reliance on Dr. Eades's opinion is erroneous because "the ALJ never discussed the subsequent medical records from GraceMed or the rheumatologist," Dr. Shaver, and did not discuss all of the findings of Dr. Reddy. (Pl. Br. 13). She notes that an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence," id. at 13 (quoting Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004)), and that he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Id. (quoting Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996)).

Plaintiff's argument fails first of all because she has not shown that the ALJ ignored any evidence. The Hardman decision rests upon the court's finding that the ALJ "barely mentioned . . . all of the other medical evidence in the record indicating that claimant did suffer severe lumbar pain." 362 F.3d at 681. Although Plaintiff asserts that the ALJ did not discuss certain records and findings from GraceMed, Dr. Shaver, and Dr. Reddy, she has not shown the he was required to do so or that the evidence contained therein was not cumulative of other evidence, and she cites to no evidence indicating that he ignored those records and findings.

9

Here, the ALJ summarized Plaintiff's allegations, the record evidence, and the opinion evidence. (R. 26-30). Plaintiff does not point to any records or findings which are contrary to, or which if accepted would preclude, the ALJ's summary of the evidence. Plaintiff points out that the allegedly ignored records contain findings of mild edema and moderate crepitus of the right knee; a mildly wide-based, cautious, and antalgic gait; 11 out of 18 tender points; limited left hand closure; Bourchard nodes, positive Tinel's sign, carpal tunnel syndrome, and mild edema of the hands, but she does not explain how such findings are contrary to the ALJ's summary, or would preclude the RFC assessed. The findings cited do not include functional limitations greater than those assessed by the ALJ--that Plaintiff can lift, carry, push, and/or pull 20 pounds occasionally, 10 pounds frequently; stand and/or walk 6 hours, and sit 6 hours in an 8-hour workday; occasionally climb ladders, ropes and scaffolds; frequently stoop, kneel, crouch, and crawl; frequently finger bilaterally; and must avoid concentrated exposure to vibration. (R. 26).

And, Plaintiff does not show that these findings are uncontroverted evidence the ALJ chose not to rely upon, or significantly probative evidence he rejected. Because the evidence cited by Plaintiff is not inconsistent with the ALJ's RFC, it appears the evidence was considered and relied upon by the ALJ. After all, the ALJ stated that he assessed Plaintiff's RFC "[a]fter consideration of the entire record" (R. 26), and Plaintiff provides no reason that the court should not take him at his word. Hackett, 395 F.3d at 1173. Moreover, because the evidence does not include functional limitations inconsistent with the RFC assessed, it is not significantly probative of any contrary conclusion. While mild

edema and moderate crepitus of the right knee, and a mildly wide-based, cautious, and antalgic gait would no doubt have some effect on an individual's ability to lift and carry, and stand and walk, the ALJ found that those abilities are limited in Plaintiff's case to less than an 8-hour workday and the evidence cited does not contain greater limitations. Similarly, limited left hand closure; Bourchard nodes, positive Tinel's sign, carpal tunnel syndrome, and mild edema of the hands no doubt affect an individual's fingering ability and ability to handle exposure to vibration. But, the ALJ found that Plaintiff is limited to frequent, rather than continuous, fingering, and must avoid concentrated exposure to vibration, and the evidence does no contain greater limitations.

Plaintiff has shown no error in the ALJ's reliance on Dr. Eades's opinion or in his evaluation of the GraceMed treatment notes or the treatment notes of Dr. Shaver or Dr. Reddy.

## III.   The ALJ Did Not Err in His Credibility Determination

Plaintiff claims that the credibility determination is erroneous because the ALJ relied too heavily on Plaintiff's inability to obtain regular medical treatment without considering the explanation for her lack of treatment. (Pl. Br. 15). She also argues that the ALJ erred in finding that x-rays taken in 2008 and that Dr. Balson's physical examination were "basically normal" (R. 29) and that her daily activities are "not necessarily fully consistent with her allegations of disability" (R. 29). (Pl. Br. 18). The Commissioner argues that an ALJ's "credibility determinations 'warrant particular deference' in Social Security Cases." (Comm'r Br. 4). She argues that the ALJ's

credibility determination is reasonable, and supported by substantial record evidence, and that he "properly considered the minimal treatment Plaintiff received as a factor that undermined the credibility of her subjective complaints of disability." Id. at 8. She argues that "Plaintiff's self-serving statement to her doctors that she had not received more regular medical care because she could not afford it does no overcome the fact that she never sought out low cost care." Id. at 9.

The ALJ found that Plaintiff's allegations of symptoms are not credible. (R. 29). He based this finding on numerous reasons. He found that the medical evidence showed that Plaintiff did not have regular treatment, suggesting symptoms are not as severe as alleged; the results of a lumbar x-ray taken in August 2008, and a physical examination performed in October 2011 were "basically normal;" Dr. Balson recommended only conservative treatment; results of a neurological examination performed in August 2012 "were unremarkable;" Plaintiff testified that medications helped control her symptoms; and, there was no medical evidence to support her allegations of hip and knee pain. Id. He noted that a former employer reported that Plaintiff never had a problem with her duties and voluntarily stopped working after she was married. Id. He found that Plaintiff's "daily activities are not necessarily fully consistent with her allegations of disability" because she performs household chores daily, she is independent in self-care, she spends time solving puzzles, she drives a motor vehicle, she cares for her pets, and she shops every other day. (R. 29).

As the Commissioner argues, the court's review of an ALJ's credibility determination is deferential. Credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

And, as Plaintiff's argument suggests, when a claimant has failed or refused to seek or follow prescribed treatment, the court must consider four elements: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." Frey v. Bowen, 816, F.2d 508, 517 (10th Cir. 1987) (stating what has become known as the Frey test). The Frey court found that the ALJ's reliance on the failure to take pain medication was erroneous because the unrefuted testimony of two treating physicians indicated that pain medication "was contraindicated

because of the side effects of stomach irritation." Id. Nevertheless, an ALJ may properly discount the claimant's credibility when he relies upon the claimant's failure to attempt to relieve her symptoms. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) ("the ALJ properly considered what attempts plaintiff made to relieve his pain--including whether he took pain medication--in an effort to evaluate the veracity of plaintiff's contention that his pain was so severe as to be disabling").

Here, Plaintiff argues that the ALJ should have applied the Frey test because Mr. Cloven's treatment records indicated that Plaintiff "was unable to receive more consistent treatment because of a lack of finances or insurance." (Pl. Br. 17) (citing R. 348, 351). To be sure, Mr. Cloven's treatment notes indicate Plaintiff is "Self Pay." (R. 348-51). Mr. Cloven noted that Plaintiff "has not been getting the proper evaluation or treatment for her problems due to lack of financial means / lack of insurance." (R. 348). And, in the "Plan" section of his treatment note, Mr. Cloven wondered both how a person could be denied disability benefits "when she has not been evaluated by the appropriate specialists?," and "how does the p[atien]t afford/finance the visits to the specialists?" (R. 351). This note clearly indicates Mr. Cloven's assessment that Plaintiff cannot afford the appropriate treatment, and from this note it might be inferred that Plaintiff told Mr. Cloven that she had not gotten proper evaluation and treatment because of an inability to afford treatment. But, that is not the only inference which might be drawn from the record evidence.

At the hearing, the ALJ asked Plaintiff who she was seeing for her medical care, and she responded, "I'm going through GraceMed here in Wichita. And they've had me set up with a couple of specialists." (R. 42). No mention was made of any difficulty obtaining treatment for financial or any other reasons, and Plaintiff admitted treatment by specialists. The following dialogue occurred later in the ALJ's questioning of Plaintiff:

> Q.   Okay. What about Ashley Clinic [(where Plaintiff saw Mr. Cloven)], what's - - why, why do you go there?
>
> A.   I didn't have a doctor at the time and that's where my late husband was going, so I went there.
>
> Q.   Okay. But that's not GraceMed or associated with GraceMed?
>
> A.   No. Ashley Clinic is over in Chanute.
>
> Q.   How long have you been going to GraceMed?
>
> A.   I want to say since April of this year, but I'm not sure.

(R. 52-53). Again, nothing was said about any difficulty obtaining treatment. Plaintiff testified that when she first sought treatment, she went to Ashley Clinic in Chanute because that was where her late husband had been going, but she was now being treated by GraceMed in Wichita, and they had set her up with a couple of specialists. Plaintiff was represented by an attorney at the hearing before the ALJ, and even after this exchange, counsel never asked any questions regarding difficulties obtaining treatment, or otherwise suggested that Plaintiff was unable to pursue treatment due to financial difficulties. (R. 55-57).

Moreover, in the section of his treatment note titled "History of Present Illness," Mr. Cloven stated:

> This 52 year old female p[atien]t ambulates into the clinic unaccompanied. She is trying to get on medical disability. She applied, she was evaluated by the disability doctor, and they declined her application last month. She has contacted a lawyer, and the lawyer has advised her to get evaluated by her health care provider so that they can compare the evaluation report to the disability doctor's report. The p[atien]t states that she does not currently have a primary care provider. Hence, she came to see me for this evaluation. This is her first visit to the Ashley Clinic.

(R. 348). In the next paragraph, Mr. Cloven recorded Plaintiff's report of her symptoms, stating, "The pt tells me," "pt states," "Conversely, she is," "pt states," and "She notes." (R. 348). In the third paragraph he stated, "The p[atien]t has not been getting the proper evaluation or treatment for her problems due to lack of financial means / lack of insurance." (R. 348). In context, it appears that Mr. Cloven assumed that Plaintiff was unable to afford medical treatment, rather than that Plaintiff reported she was unable to afford medical treatment. In Mr. Cloven's treatment note, he records Plaintiff's reports of symptoms primarily <u>as her statements</u>, but he makes a pronouncement that she is unable to afford treatment, without any suggestion that was in accordance with her own statement or report. Moreover, despite being represented at the hearing, and despite two opportunities presented by the ALJ's questions as to her treatment history, Plaintiff did not suggest that obtaining treatment had been any problem.

Here, the ALJ found that Plaintiff's lack of attempts to seek regular medical treatment suggested that her symptoms were not as severe as she alleged. Plaintiff argues

that the ALJ should have considered that a lack of finances or insurance justified the lack of regular treatment, but other than Mr. Cloven's after-the-fact, unsubstantiated pronouncement to that affect, there is simply no record basis to consider that possibility. Plaintiff did not suggest the possibility at the hearing, despite representation and opportunities. Nowhere is there a suggestion <u>by Plaintiff</u> that she did not seek treatment because she could not afford it and was not aware of low or no cost alternatives. There is no evidentiary basis for the ALJ to have made such a leap.

Plaintiff's remaining credibility arguments merely seek to have the court reweigh the credibility determination and substitute its judgment for that of the ALJ. It may not do so. <u>Bowman</u>, 511 F.3d at 1272 (10th Cir. 2008); <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." <u>Lax</u>, 489 F.3d 1084 (citations, quotations, and bracket omitted).

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 14th day of September 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
